Thank you, Your Honors. Good morning. May it please the Court, that I, Alan Garoff, be the plaintiff's attellant. I'll try to reserve four minutes or above. In Watchtower Bible, the Supreme Court spoke in broad categorical terms about, quote, Let me stop you there for a moment because what you said is at least contrary to my understanding of the record. What type of canvassing is treated different than political canvassing? I understand that newspaper, people who deliver newspapers are treated differently. And I understand people who are doing direct sales may be treated differently. But where, I didn't think canvassing, nonpolitical canvassing, let's assume I'm doing consumer canvassing. I want to go door to door and find if you use a certain product or some other. I'm a neighborhood guy and I want to find out what kind of plants the neighborhood wants to put together. What other canvassing is treated differently? Well, canvassing, as we noted in page 18 of our brief, just using the common understanding. Tell me what other canvassing the law treats differently. You go door to door and you are selling a product, trying to get people to buy a consumer product or service. That's a form of canvassing. That's sales. That's sales. So the question is what other canvassing. I understand that you want to treat sales as if they were canvassing. And I understand your argument there and we can get to it. But you made a factual predicate that other canvassing is treated the same. So it may have a semantic difference. I'm simply going by the dictionary definition in page 18 of our brief. And I'll quote again. Canvass is to go through a district or go to persons in order to solicit orders or political support or to determine the opinions of a senator. But let me ask the question differently. Your clients do two things. Your clients, when they go door to door, I take it just seek signatures on petitions, correct? There are also literature drops. There's also assessment of people's voting intent. And also signature gathering occurs, not just forward and forward. Okay. So don't use the term of canvassing for a moment. Given what your clients do, is there anybody else who does what your clients do that is treated as an independent contractor? Well, yes. If you are going door to door and you're knocking on doors and you're trying to talk about consumer products, then you have a benefit of unemployment quota section 650 and you're called a direct sales salesperson. If you're going door to door and you want to talk about politics, you are treated as unemployment under the ABC test. Well, you said if you're going door to door to talk about products, but by that you meant if you're going door to door to talk about a particular product to try to sell that product, right? Not to say we just want to know your opinion on this, that, and the other thing. Yes. Go ahead. If I'm the Gallup poll to take something that used to exist or pollster who went door to door and I wanted to learn your opinions about anything, would I be an employee under the California test or an independent contractor? If you were a Gallup pollster and you were hiring people. No, you don't get to – don't change the hypothetical. I tried to give you a hypothetical. Try to deal with the hypothetical. I'm a pollster and I'm going door to door and I want to know what the residents think about various things. Rather than calling them on the phone, I'm going to ask them. Am I under the California statute or am I an employee or an independent contractor? I would have to review 85 to see if there are other exemptions. There is an exemption for data aggregators. You're familiar with the statute. I'm going to ask the other side the same question. I don't – I think under the statute you would be judged under the ABC test. I don't know whether you would be an employee or independent contractor or not, but wouldn't you be judged under the same test that your folks are judged under, which is to say the ABC test? You probably wouldn't be. If you don't have an exemption and you're going door to door and you're soliciting opinions, then you are also treated – the state discriminates against speech in a variety of ways and maybe the Gallup pollster would have a good case as well. We don't represent Gallup. We represent Globalized Message and a variety of political groups, and they are being treated differently. Their speech is being treated differently. Let me ask the question slightly differently. You're not making an equal protection claim in this case, right? No, because we have a First Amendment claim. Right. Okay. And so what is the discrimination based on content? Assume somebody who's going door to door to argue exactly the opposite of what your people are arguing or seeking to proselytize. So you have something on the ballot, vote yes on Proposition X, and you need to get signatures for Proposition X, and the other people are going around saying don't sign the petition, it's a terrible idea. So the content of their message is precisely the opposite of yours. Aren't they also subject to the ABC test? First of all, I would disagree with that. We don't have the thing for viewpoint discrimination. So their viewpoint might be different. But as far as content-based discrimination is concerned, the function of their speech, the purpose of their visit, and the subject in which they're addressing, which is Proposition X or whatever it is, would be the same. Okay. So now change that to somebody who goes around door to door to talk about something you don't care at all about. They are also treated under the ABC test, right? So it seems to me it's not the content of the speech, it's the way you are conducting your business. Why am I wrong about that? Your Honor, Reid tells us that we have content-based discrimination whenever government treats speech differently based on its subject, based on its purpose, or based on its function. Viewpoint discrimination may be a subset of that, but we do know that when an employee, when I say a worker, a worker goes to a door, knocks on the door, and starts to talk to the resident, if the subject of that discussion is a demonstration of product or attempt to solicit an order, the purpose of that talk is to sell something as their service, then the state imposes one set of rules on the employment relationship. But if the person opens his or her mouth, and instead of a sales presentation, it's a political message, how much of their purpose is different? Judge Van Dyke has a question. Counsel, I think the discussion in argument today sort of mirrors a little bit the thing that I struggle with in the briefing, and that is there's, on one hand, it seems like you can draw these, what would probably be sort of accurate labor classifications between, say, a canvasser, and I understand your point is a door-to-door salesperson is actually a canvasser, but let's just say you can, that there's some distinction between a commercial salesperson, a canvasser, a pollster, a, you know, a variety of other things that people go door-to-door. And that's the government's argument, as I understand it, is those are just different things. They have a, they're rooted in like a labor distinction. Your argument is they're not really that different. It's got to be right that just because the label is different, that that doesn't necessarily control, I think. So what is, where is the line? That's what would be helpful. So what is the line that causes for you, a door-to-door salesperson, to be close enough to a canvasser, a political canvasser, so that it is content, there's content discrimination on the speech, but say, you know, somebody going door-to-door to work on your plumbing, you know, somebody coming to your door to work on your plumbing, I assume you would not say. So where does that line, because I think that might be helpful, like, because that's what would have to, if we were to rule in your favor, we'd have to have some line that we could draw that, you know, I think we would say, well, you can't just say, you know, there's a labor distinction between a Democrat pollster and a Republican pollster, right? I think everybody would agree that that's, yeah, maybe there is a labor distinction, but that's also content and probably viewpoint discrimination. But where's that line? Tell me where the line is. The line I think is best explained in the American Society of Journalists and Authors case that a previous panel just issued. If you look at page 961 and 15F4, the panel states, and I'm quoting here, the rules understandably vary based on the nature of the work performed or the industry in which the work is performed. And I think that's really the number one. What is the nature of the work being done here? If you look at section 650 of that employment code, our people meet all the factors there except the subject of their visit. They don't work by the hour. They are paid by milestone. They have an understanding that they work as independent contractors, and they go door to door. But the only thing is the purpose of their visit. So what you have is the other thing that the American Society talked about, which is quite critical, and that's the warning that the court gave in footnote 9, page 964. A legislature could, I'm quoting here, conceivably define services or occupations. Counsel, what about the distinction between commercial and not commercial? Because it seems to me that that, even if it's not supposed to be doing some of the work, it just intuitively it feels that's what feels different about a door-to-door salesperson selling vacuum cleaners or whatever else versus a political canvasser. I mean, in some sense they're both selling something, but one is commercial and one is not. Why is that not a legitimate distinction? Because if you think about the activity the person is performing, they are essentially engaging in persuasion, in person-to-person, knocking on the door and persuading people. You know, it's been a long time since I've read or watched Death of a Salesman, but I did look it up before coming here. We never know what Arthur Miller puts in Lily Logan's bag. A person who can do this job, a person who can sell a ballot proposition or a candidate, can also show up with a vacuum cleaner or cosmetics. It is an act of sales, an act of individual persuasion. Now, it is true, Your Honor, I think you can slice occupations differently within the commercial context. So, for example, Section 650 talks about consumer products. In theory, you can have someone canvassing for a non-consumer product, and we can imagine what that would look like. If the person is simply trying to, say, persuade people in a neighborhood to support their employer's purchase of industrial equipment, you can imagine that. But here, and also, for example, in commercial space, we might say that selling real estate is a distinct occupation or function than, say, selling used cars, and there could be particular rules that apply to those. But even if we agree that there should be different treatment of commercial people and non-commercial people, that's okay. All the state would have to do, though, is then justify that distinction under strict scrutiny, and I would imagine that the state would probably prevail if they had some kind of compelling interest. Well, we only get to strict scrutiny, it seems to me, if you assume the answer to Judge Van Dyck's question, which is that we've crossed the line. We don't subject all distinctions to strict scrutiny. After all, the statute says you're judged under the ABC test. Some of you may be employers. Some of you may be independent contractors. It doesn't answer the question. So I'm still struggling with why you think we apply strict scrutiny to a statute that doesn't exempt your people from the general test that's applied to everybody except newspaper distributors and direct salesmen is a little bit misleading because the statute defines it a little differently. But for the moment, take that as the definition. You're not exempted from the statute. These other two are. Why does that give us strict scrutiny? Well, see, but it doesn't. See, it's an exemption statute. That's why I'm having some difficulty with your argument. The statute says we'll apply the ABC test in determining whether you're an employee or an independent contractor. We have two exemptions, and the exemptions don't seem to be based on speech. The exemptions seem to be based on the nature of a job. And so why should we view those exemptions under strict scrutiny? If you start from the conclusion that the statute is classifying the job, then obviously we do not avail. However, I would submit that the one thing that takes a person here, our clients, our workers, the one thing that takes them out of 650 and the one thing that takes them out of the newspaper exemption is that they're talking about the wrong thing and they're delivering the wrong paper. I would reserve my remaining moments to see a majority of the points. Okay. Well, we'll give you some time for rebuttal. Thanks. We had a lot of questions for you. Mr. Zeldon-Cepeda. Good morning, Your Honor. May it please the Court. Jose Zeldon-Cepeda, California Attorney General's Office, with Attorney General Rob Ponta. What we have at issue here, Your Honor, is Assembly Bill 5, a generally applicable labor regulation that falls comfortably within the line of cases that this Court has set out and made clear that economic regulation does not generally present person issues. Right. Right. So let me take you right to the issue that Judge Van Dyke was asking about and see if you can help us. Forget the newspaper distributors for the moment. At least I don't find them very persuasive. They were argued. I'm going to ask him. Yeah. What does direct sales mean under this statute? If I'm a vacuum salesman going door to door like the old Fuller Brush Man and I'm coming to your door to explain to you why Fuller Brushes are absolutely terrific, am I exempted? And if so, why isn't there a problem? Because my commercial speech is being treated more favorably than Mr. Gura's client's political speech. Well, Your Honor, I think the phrase that you used a few minutes ago to describe a statute that has an exemption statute, I think it's a bad description, and I think that's the reason why the legislature was grappling with the ways to try to craft an exemption that is focused on the occupation of it. Going specifically to the particular direct sales salesperson exemption, that incorporates, as the Court is aware, the Unemployment Insurance Code definition, and that is at Section 650. And that, in turn, has very specific criteria in order to meet that. And what I think is very telling and that would be severe. And the criteria, we all agree the criteria are quite different than what Mr. Gura's clients do. He says, however, it's discrimination in the message being given. The person who comes door to door to sell you the brush is trying to give you a message that it's a good brush, and his people are trying to give you a message that it's a good petition to simplify things. So why does one get more favorably treated than the other? Well, Your Honor, in terms of the actual transfer statute, there is nothing in the actual statute that talks about the particular topic that is being discussed. All the aspects of the criteria focus on the particular occupation. Counsel, that is the nub of this case, it seems like. Because it seems like your argument is, well, as long as there are different labor classification, there's nothing talking about the communication content of what they're actually saying. But if the labor, if the main, or I don't know what word you'd put on it, the primary, the main, the predominant distinction between two different labor classifications is, in fact, the content of what they say, then you can't bootstrap from, you can't avoid, I don't think the, tell me if you think you can. If, assume for a second that the only difference or the predominant difference or the primary difference, let's just say the primary difference between two different labor classifications was the content of what they did. One of them was paid people that came to convince you to vote for the Democrat candidate, and one was paid people that came to convince you to vote for the Republican candidate. Your position is not, I don't think, I hope not, that you can, that since those are two different labor classifications under some California code, that that would control, right? You would agree that those two labels don't control. Yes, Your Honor. I understand the point that the court is making. So what is the line? So what is the line? Because your opponent says really the only difference between, sure, different label, I'll give you that. The difference between a commercial salesperson and a political canvasser, the only significant difference or at least the primary difference between those two, pretty much everything else they do is the same, but the only difference is the content of what they're trying, not the viewpoint. It's not Republican versus Democrat, but the content is the difference. And so why don't we look past the labels to see how, see if that's right, if what your opponent is saying is right. And, Your Honor, the case law has basically explained the process that this court advocates in order to assess that. We agree that we're not, our argument is not that merely labeling something automatically says that First Amendment scrutiny does not apply. But what the case law holds is that state regulation of economic activity is distinct from regulation of protected expression. And the key question is whether the content would quote a significant expressive element due to the legal remedy, or if the regulation has the inevitable effect of singling out those engaged in expressive activity. That's from this court's decision in International Franchise Association. And this court can look both at the inevitable effect of the statute and its stated purpose. And here the district court went through its analysis under this case law and said. Well, counsel, when you look at the purpose, I mean, it's pretty obvious that the door-to-door sales people went and got themselves an exemption, as did the newspaper delivery folks. And that's not, I mean, that's how politics works. But when I sit here and I think about if the political canvasser companies had gone to the legislature, the California legislature, and asked for an exemption, I don't know whether they did or not, but do you think they would have gotten an exemption? You don't have to answer that because I'll just tell you there's no way they would have gotten an exemption because who's the biggest enemy of the legislature in politics in California? The direct democracy folks, right? I mean, so like if I'm a legislator, why would I give an exception to those folks? And so isn't that kind of troubling if we've got an exception that like even if they ask, I don't know whether they ask for it or not, but I think most of us would probably think there's no way they're going to get an exception. I'm not going to give it to them if I'm a legislator. It sucks away my power. And isn't that like a serious First Amendment problem, that the differential treatment here is probably rooted in that or at least there's a good likelihood that it is? Your Honor, I wouldn't hazard a guess as to whether such an exemption from the ABC test would have been successfully allowed before. But as this Court has made clear in a similar context in Gallagher v. Serra, the fact that this part of tradeoffs is part of the legislative process does not generally give rise to a constitutional problem. That takes me back to the question I asked Mr. Gur at the beginning. This is not an equal protection argument. That is correct. So what do they have to show to establish a First Amendment violation? I had thought it was a restriction that somehow dealt with the content of speech. Do you agree? Yes, Your Honor, that's definitely an argument. Okay. So now I'm back to Judge Van Dyke's question. You've said that if your commercial speech, if you will, is to sell a product, you will treat you one way. If your commercial speech, because these folks are engaging in both political and commercial speech, and they're working for money, if your commercial speech is to sell a petition, you get treated differently. Is that content-based? No, it is not, Your Honor. It may be an equal protection violation, but I'm trying to figure out where the line between the two is. Potentially, Your Honor, and that's the similar equal protection claim that was brought by the freelance photographers and writers in the American Society for Journalists and Authors case. In terms of the First Amendment aspect of it, the focus is the court looks at both the stated purpose of the legislation. Here, Assembly Bill 5 was focused on trying to address worker misclassification, which the legislature deemed was a rampant problem and that it was leading to the erosion of the middle class. There was no hint of any type of focus on that. No, I understand that they have a legitimate purpose. Nobody, I don't think anybody, Judge Van Dyck's hypothetical wasn't, I think, meant to suggest that this was done out of animus because we didn't even know if anybody ever sought an exemption. But go back to the American Society of Journalists case for a moment. What the court said there is the fact that you're a journalist and your job is speaking doesn't make any difference because nobody's classifying you about what you're saying, the content of what you're saying, but just the job that you, the job classification that you fall into. Does that control us here today? Yes, Your Honor, it does. And it wasn't just the American Society of Journalists and Authors case that said that. This goes back to this court's decisions in International Franchise Association v. City of Seattle, inter-pipe contracting v. Becerra, as well as a more recent 2019 case called Homeway.com v. City of Santa Monica. When a party raises a First Amendment challenge to legislation that really looks to be more of a commercial type of activity or labor regulation like in this situation, the court looks at whether the particular conduct that is being regulated has a significant expressive element and that that particular expressive element was what the legislature was focusing on. Okay. And it plainly wasn't, but we're talking here about exemptions. And what case was that? I'm sorry, that you were just mentioned. So the case is our International Franchise Association v. City of Seattle, which was a minimum wage regulation in Seattle. There's also the International Franchise, I'm sorry, the Homeway.com v. City of Santa Monica is a more recent case that we, I don't think we've raised in our briefs, but that's a 2019 decision, where companies were suing on First Amendment grounds to a City of Santa Monica regulation that prevented them from making certain types of housing available online. And the court concluded that that falls comfortably within the commercial regulation realm. And because- Yeah, but I don't, I know you're, I don't want you to run out of time, but you said that the key test is whether you look at whether or not the expressive, the expression is what? Did you say is it because it's a, that that's what the legislature was targeting, or is it because expression is a key part of what that occupation entails? It's a little bit of both, Your Honor. And just to make sure I don't miss data, I'll go ahead and quote what the operable test is. The key question is whether the conduct with a significant expressive element drew the legal remedy, or if the regulation has the inevitable effect of singling out those engaged in expressive activity. And that's from the International Franchise Association case, and that was applied more specifically in the Assembly Bill V context by this court in the American Society of Journalists and Authors. So I want to get back to the exemption notion, because it's, I keep going back and forth on this as I think about it. If there are no exemptions, they'd have no complaint under any of the case law. I think that's correct, Your Honor. I think. This is not a statute that says everybody is treated under one test except for canvassers. It says everybody's treated under one test except for two classes, those people who were traditionally treated under the other test and who were hired under that sort of notion. That's the 650 exemption. And for some reason, newspaper distributors, who I kind of think probably had the ability to get themselves exempted in the legislature, but neither of those are content-based restrictions. And so my question is, do the exemptions matter in this case? Unlike City of Gilbert, where the exemptions were content-based, you can say X on a sign but not Y. Here, no one cares what the two people subject to the exemption say. They're not based on content. It's based on our description of their jobs. And I take it a traditional recognition that they were independent contractors. So how does that factor into our analysis? I think that basically underscores why the district court correctly concluded that the first amendment, the plan is claiming that there is a first amendment violation, that this is discriminating, I guess, based on infringing the first pre-speech rights. If that isn't, then that plan fails, Your Honor. What we have is a broad statute. Given the fact that it is such a broad statute and has a general rule, because most of the bulk of the statute is geared towards setting out exemptions from the general rule, then that's the reason why those are even. So if we had a statute that said we'll judge everybody under the previous test, whatever that was, before ABC, except for canvassers who will be judged under the ABC test, would that pose a first amendment issue? I think it would be a stronger case, Your Honor, but still going back to the background test about whether that particular statute was focused on the significant expressive element that it was trying to regulate, then unless that standard could be met, then I don't think there would be an issue. So the focus, again, is what exactly is it about that particular conduct that the legislative body was focusing on, whether it was something that was improperly focused on content or other aspects of the viewpoint, or was there some other aspect to it that the legislature was trying to address through its particular regulation? But, counsel, that's a struggle I have with the targeting concept. It's not dispositive, or I'm not sure. Do you think it's dispositive, or does it even matter whether the legislature is actually attempting to, quote, unquote, target content versus just that that ends up being an effect? Because in a situation like this where maybe certain entities have the ability to ask for exemptions, but other entities don't, right, just through the political process, and maybe there's nothing nefarious going on, but some get it and some don't, do you have to show that the legislature meant to target differential content, or if that's the effect, is that good enough? I see that I'm out of time, but if I may, I'd like to respond. Sure, sure, go ahead. So the answer to that question, Your Honor, is that it's not dispositive that it wasn't that the particular legislation was targeting something. That's one part of the test. The other aspect that you alluded to as part of your question is the other way that First Amendment scrutiny applies is that the regulation has the inevitable effect of singling out those engaged in expressive activity. So it could either be because that was the focus of the legislation, or because given the way that the statute plays out, that is the inevitable effect that it ultimately will have to curtail First Amendment activities. Here, neither of those are met, and therefore, the district court's decision was correct, and we urge this court to affirm the district court's denial of the former injunction. Unless there's any other questions, I'll submit. Thank you, counsel. I don't know where we were with Mr. Gurur's time, but let's give him a couple minutes. Thank you, Your Honor. Three points. First, quickly, to Judge Van Dyke's point, while I suspect that Judge Van Dyke may be correct that the legislature is not thrilled to give an exemption to people participating in direct democracy, the Supreme Court made this very clear in reading that a benign motive is irrelevant. We don't have to show that there's any kind of illicit legislative animus towards people who are being disfavored. All that matters is that the legislature is treating speech differently based on its content, purpose, or function. And then this court, En banc in Berger v. Seattle, talked about how you had perhaps not an intentional effort to privilege, but you did have a law that privileged commercial over political speech, and that was almost per se unconstitutional. En banc court here threw that out. And here we have the same thing. We have a commercial activity. Commercial content of the presentation is privileged over the non-commercial. With respect to the other concern about exemptions, I would refer the court, please, to Pacific Coast Horse Showing. And again, to quote, when a scheme favors particular kinds of speech and particular speakers, through an extensive set of exemptions, that means it necessarily disfavors all other speech and speakers, and AB 5 is nothing if it's not a whole lot of exemptions. And you wonder at what point are the exemptions really the rule, and you have this Swiss cheese type of thing. Let me ask you this. Does your case boil down to, in the end, a contention that this statute is unconstitutional because it treats people who go door-to-door to engage in commercial speech differently than those who go door-to-door to engage in canvassing? That's your contention. That's your contention, isn't it? Yes? Our contention is that both sets of people are engaging in the same activity, in the same traditionally understood function, in the same occupation. Okay, but I understand the reasons for your contention. I just want to make sure that's your contention. Your contention is, as I read your brief, the only argument you make about this statute being unconstitutional is that it treats your clients, put aside the newspaper delivery people for a moment, differently than, I don't know if there are door-to-door yacht salesmen, but there really may be door-to-door real estate people. So it treats your clients differently than those people who go door-to-door to propose a commercial transaction. That's the meat of your argument, is it not? Yes, Your Honor. It's a content-based exclamation. Well, that leads to my next question. Is it really content-based? If you go door-to-door to sell fuller brushes and you also say to the people who are there, and by the way, you should vote for Arnold Schwarzenegger in the next election, are you still, aren't you treated exactly the same as somebody who doesn't say that? Okay. I'm not sure how the Labor Commission would address someone who comes to the door with two purposes. If there's a point in time where they say that the primary purpose of your visit might have been illicit, and therefore you're going to go into this other category. But I can say that if you think, for example, of musicians, let's take three singers. Let's suppose you have a singer who has a commercial purpose. He writes and sings jingles for advertisements. A second singer sings love songs, and a third singer is a protest singer. Can the State of California really say, well, the protest singer has a different job qualification, and we're going to stick it to them? But the commercial level, we like jingles in California. So the jingle singer is a jingle singer, and their labor classification is illegal. Here what's giving me trouble is the classification here is a perfectly understandable one. It may or may not be constitutional, but we're not splitting up a job into its various components. We're taking real job classifications. All jingle singers are treated the same. Your Honor, I would say the question is not whether it's understandable. We understand what the state is doing. The question is whether that's splitting, whether those lines are drawn based on the content of speech. Is it what the previous case called granular? And I think that's the nut. Is it a granular distinction based on speech, or is it, as the state claims, something that's based on function, on the general activity of what the person is doing? With that, Your Honor. I thank both sides for their arguments in this case, and it will be submitted.
judges: HURWITZ, VANDYKE, Ericksen